IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

LONNIE BECK,                          )
                                      )
                    Petitioner,       )
                                      )
        vs.                           )        No. 1:20-CV-67 SNLJ
                                      )
UNITED STATES OF AMERICA,             )
                                      )
                    Respondent.       )

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Lonnie Beck, a person in federal custody. On November 27, 2018, Beck pled guilty before this Court to the offense of Felon in Possession of a Firearm (Count I), Possession with Intent to Distribute Methamphetamine (Count 2) and Possession of a Firearm in Relation to a Drug Trafficking Crime (Count 3). On March 19, 2019, this Court sentenced Beck to the Bureau of Prisons for a term of 18 months on Count I and II, and 60 months on Count III, to run consecutive for an aggregate term of 78 months imprisonment. Beck's § 2255 motion is fully briefed and ripe for disposition.

## I.  FACTS

### A.  INDICTMENT

On July 10, 2018, Lonnie L. Beck (Beck) was charged by Indictment in the Eastern District of Missouri in Count I with being convicted felon in possession of a firearm, in Count II with possession with intent to distribute methamphetamine in violation of Title 21, United States

1

Code, Section 841(a)(1), and in Count III with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. Section 924(c)(1)(A), and punishable under 18 U.S.C. § 924(c)(1)(A)(i). (DCD 1)

## B. PLEA AGREEMENT AND GUILTY PLEA

On November 27, 2018, Beck executed a plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A), wherein he agreed to plead guilty to all three counts charged in the Indictment. Moreover, the United States agreed that no further federal prosecution would be brought in this District relative to the defendant's possession of a firearm and methamphetamine on May 29, 2018, of which the Government was aware at that time. (Doc. 31, Plea Ag., pp. 1-2)

In the Plea Agreement, the parties agreed that as to Count I, Felon in Possession of a Firearm, the base offense level was found in Section 2K2.1 and depended on the nature of the firearm, the defendant's criminal history and other factors therein. As to Count II, Possession with Intent to Distribute Methamphetamine, the parties agreed that the base offense level was 24, as found in Section 2D1.1(c)(8). The parties agreed that the quantity of mixture or substance containing methamphetamine for which the defendant was accountable, including relevant conduct, was more than fifty grams, but less than 200 grams. As to Count III, the minimum term of imprisonment of five years imposed for Count III shall run consecutively to the terms of imprisonment imposed for Counts I and II. (Doc. 31, Plea Ag., pp. 7-8)

In the Plea Agreement, Beck agreed that the facts in his case were as follows:

> On May 29, 2018, Detective Schamburg of the Perry County Sheriff's Office stopped at a residence in Perryville, Missouri, because he observed Kyle Green, for whom there were outstanding warrants for arrest, standing outside the shop located at the rear of the property. Upon arrival, Detective Schamburg placed Green into custody. Detective Klaus, Deputy Crites, Deputy Gross, and Deputy Johnson arrived to assist. Deputy Crites indicated she had received

2

information about Beck possessing a chrome revolver.

Defendant Beck consented to Detective Klaus patting him down. While patting Beck down, Detective Klaus noticed a small bulge in Beck's left pants pocket, which was a small plastic baggy containing methamphetamine.     Beck was then placed under arrest and advised of his rights pursuant to a standard Miranda card. While speaking with Detective Klaus, Beck admitted that the methamphetamine belonged to him.

Defendant Beck granted consent to Deputy Crites to search his nearby BMW vehicle. While searching the vehicle, Deputy Crites located a small blue container, which contained marijuana, attached to the keys in the ignition.

Shaun and Donna Steele gave their consent to Detective Schamburg to search their residence and shop. During the search of the shop, Detective Schamburg located a backpack. Defendant Beck admitted that the backpack belonged to him and informed Detective Schamburg that there was a chrome revolver in it. Detective Schamburg was aware that Beck was a convicted felon and asked him if he was prohibited from owning a firearm. Beck indicated that he knew he was not supposed to have a gun. Detective Schamburg then asked Beck for consent to search the backpack, which Beck granted.

A search revealed that the backpack contained three plastic baggies of marijuana, approximately five grams of methamphetamine, a glass methamphetamine pipe, brass knuckles, and a chrome revolver, which was in a "zipper vault" for which Beck provided the combination. The revolver, a Rossi .357 Magnum, SN: HU937491, was loaded with six rounds and was seized. Assorted cash bills amounting to $1480 were also found in the "zipper vault." Beck admitted to previously being convicted of a felony crime and admitted that the methamphetamine belonged to him.

A small safe was located in the shop which Lonnie Beck also admitted owning. Beck provided the key to the safe, which contained a small amount of hash oil, some prescription pills, and various items of drug paraphernalia as well as a number of rounds of .380 ACP pistol ammunition. The items seized were photographed while processing the evidence at the Sheriff's Department. Beck was arrested and transported to the Perry County Jail.

Detective Schamburg and ATF Special Agent Tom Hess interviewed Beck at the Sherriff's Department after advising him of his *Miranda* rights. Beck indicated that he understood his rights and agreed to speak with the officers. Beck stated that he had obtained the gun from a man in Cape Girardeau a few years earlier, and had traded a different gun for it. Beck admitted to being involved in buying methamphetamine in Cape Girardeau and

selling it in Perry County. Beck indicated that he had gotten involved in it again after a divorce. Beck also indicated that he possessed a .380 automatic pistol, which he had "put up" someplace for safe keeping.

The controlled substances seized from Beck were analyzed by the MSHP Crime Laboratory in Cape Girardeau. Item 3.1 A-B was two plastic bags, with crystal, weighing a total of 6.24 grams containing methamphetamine.  The bag in Beck's backpack contained 5.67 grams of methamphetamine.

The Rossi model 462, .357 Magnum revolver, serial number HU937491, was manufactured in the country of Brazil. The firearm, therefore, traveled in and affected interstate and foreign commerce prior to its discovery in Missouri.

As charged in Count I of the Indictment, on May 29, 2018, in Perry County, within the Eastern District of Missouri, defendant Beck possessed a firearm, a Rossi, Model 462, .357 Magnum revolver, which had been manufactured in the country of Brazil and had previously traveled in interstate and foreign commerce.    Prior to May 29, 2018, defendant Beck had been convicted of crimes punishable by imprisonment for a term exceeding one year, including:

  1)    On January 29, 1993, in the Circuit Court of Perry County, Missouri, in Case Number CR491-159FX, for Class C Felony of Burglary in the Second Degree and the Class C Felony of Stealing; and

  2)    On February 3, 1993, in the Circuit Court of Perry County, Missouri, in Case Number CR892-2222FX, for Class C Felony of Burglary in the Second Degree.

As charged in Count II of the Indictment, also on or about May 29, 2018, in Perry County, Missouri, defendant Easton knowingly and intentionally possessed with intent to distribute methamphetamine, a controlled substance; and, as charged in Count III, defendant Beck, during and in relation the drug trafficking crime charged in Count II, for which he may be prosecuted in a Court of the United States, he knowingly possessed in furtherance thereof, a Rossi, Model 462, .357 Magnum revolver.

(Plea Ag., pp. 3-6)

On November 27, 2018, Beck appeared with his attorney and pled guilty to Counts I, II

and III of the Indictment, charging him in Count I with being convicted felon in possession of a

firearm, in Count II with possession with intent to distribute methamphetamine in violation of

Title 21, United States Code, Section 841(a)(1), and in Count III with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. Section 924(c)(1)(A), and punishable under 18 U.S.C. § 924(c)(1)(A)(i). (PSR, ¶ 1, DCD 30, 49)1

Relative to Chapter 3 Adjustments, it was also agreed that Beck should receive three levels for acceptance of responsibility pursuant to Section 3E1.1 (a) and (b). (Plea Ag., p. 8)

During his change of plea hearing, when asked if he was satisfied with the way his lawyer had handled his case, Beck replied "Yes, sir." (Plea Tr., p. 4)  Beck acknowledged to the Court that his lawyer had investigated the case to his satisfaction. When asked if his attorney had done everything he had asked him to do, Beck responded, "Yes, sir." (Plea Tr., p. 4)   When asked if he had any "gripes or complaints whatsoever," Beck responded, "No, sir." (Plea Tr., p. 6) In the Plea Agreement, Beck represented that he was satisfied with the representation he had received from his lawyer.

> The defendant is fully satisfied with the representation received from defense counsel.   The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel.   Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

(Plea Ag., p. 13)

Pursuant to the Agreement, Beck also agreed to "waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

---

1 References to motions and rulings are to the district court docket number in Case 1:18 CR 90 SNLJ for such motion, such as (DCD____, p. __ ), references to the Plea Stipulation (DCD 31) shall be as (Plea Ag., p.____); references to the Final Presentence Report (DCD 36) shall be as (PSR, ¶____); references to the Change of Plea Hearing transcript (DCD 49) shall be as (Plea Tr., p.____); and references to the Sentencing Transcript (DCD 51) shall be as (S. Tr., p. ).

motions, discovery, the guilty plea, the constitutionality of the statutes to which defendant is

pleading guilty, and whether defendant's conduct falls within the scope of the statutes."   (*Id*. at

p. 9, § 7.a.(1)) In the Plea Agreement, Beck also agreed "to waive all rights to contest the

conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28,

United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective

assistance of counsel." (Plea Ag., p. 10)

      Beck also indicated that he had read the Plea Agreement, had gone over it in detail with

his attorney, that his attorney had explained the contents of the agreement in detail to him, and

that he understood the contents of the agreement. (Plea Tr., p. 6) When asked if there was

anything in the agreement that he did not understand, Beck replied "No, sir."   (Plea Tr., p. 6)

This Court asked Beck "Have any promises been made by anyone to get you to plead guilty

other than the promises set out in this agreement?" (Plea Tr., p. 6) Beck replied, "No, sir."

      During the plea hearing, this Court asked "the prosecutor then to summarize the

evidence the Government would prove if the case were to go to trial." (Plea Tr., p. 13) In

response, the prosecutor recited primarily the facts set forth in the Plea Agreement that were

stipulated to by Beck, including incorporating by reference the facts set forth on pages 3

through 6 of the plea agreement.  (Plea Tr., pp. 13-14)  When Beck was asked by this Court if

he "heard the statements from the prosecutor" and was "everything he said true and correct,"

Beck replied "Yes, sir" to both questions. (Plea Tr., p. 14)  When this Court asked, "Do you

admit that you did all those acts he described?", Beck replied "Yes, sir."   (Plea Tr., pp. 14-15)

Beck answered affirmatively when asked by this Court that there was no question about him

doing the acts described, and that he had read all the facts in the Plea Agreement on pages 3, 4,

5 and 6, and everything in there was true and correct. (Plea Tr., p. 15)

## C.  THE PRESENTENCE REPORT

The United States Probation Office prepared a Presentence Investigation Report (PSR).

As indicated in the Offense Conduct section of the PSR, paragraphs 12-18, on May 29, 2018, in

Poplar Bluff, Missouri, Beck was responsible for the following:

### Offense Conduct

12.   According to Perry County, Missouri, Sheriff's Office and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) records, on May 29, 2018, a sheriff's deputy observed Kyle Green (not indicted) outside the residence of Shawn Steele (not indicted), 540 Robb Street, Perryville, Missouri. The deputy also noticed a vehicle belonging to **Lonnie L. Beck** in the driveway. The deputy familiar with Green and knowing he had active felony warrants stopped at the residence and placed Green under arrest. While there, contact was made with **Beck** and a search of his person revealed a small plastic baggie containing methamphetamine located in his pants pocket. **Beck** was subsequently placed under arrest. A search of **Beck's** vehicle revealed a small blue container with marijuana inside. Also present, was Aaron Pikey (not indicted). A search of Pikey's vehicle revealed 20 grams of marijuana located in a green plastic container. Contact was made with Steele and his mother, Donna Steele (not indicted) who owned the residence. The deputies informed them that they had received information that narcotics sales were being conducted at the residence and requested a search of the home and the outside shop. Prior to the search, Elizabeth Ullman (not indicted) and Tabitha Brawley (not indicted) were removed from the residence.

13.   During the search of the shop deputies located a backpack which **Beck** admitted belonged to him. The backpack contained a cloth zipper container containing a bag of marijuana and a plastic baggie containing five grams of methamphetamine, a red metal container containing two plastic baggies of marijuana, a glass methamphetamine pipe, brass knuckles, and a locked black "Zipper Vault." **Beck** provided the combination to the vault which contained a chrome Rossi .357 Magnum revolver, loaded with six rounds of ammunition, and $1,480 in United States currency. **Beck** also confirmed  ownership of a Sentry Safe located underneath a bar in the shop. The safe contained marijuana grinders, hypodermic needles, marijuana pipes, 18 rounds of .380 ammunition, marijuana oil, 4.5 Alprazolam tablets, one Clonazepam tablet, three Oxycodone tablets, a Pro .380 magazine, and assorted personal items.

14.   A search of the residence revealed needles, spoons, a pill bottle containing marijuana, a homemade pipe, a plastic container with marijuana inside, and an Axe Can with drug residue locate in Steele's bedroom. A methamphetamine pipe was located in the kitchen.

In the basement, deputies located a green pouch containing 2.5 grams of marijuana, Ullman's EBT card and driver's license, a methamphetamine pipe, and United States currency.

15. **Beck** was interviewed regarding his arrest and indicated he also owned a .380 handgun which was "put up" somewhere. **Beck** admitted his involvement in narcotics sales indicating he and his wife divorced and he began purchasing methamphetamine in Cape Girardeau, Missouri, and traveling to Perry County, Missouri, where he sold the methamphetamine. **Beck** admitted to purchasing four to five ounces of methamphetamine at a time.

16. According to ATF records, the firearm a Rossi, model 462, .357 caliber firearm was manufactured in Brazil; and therefore, traveled in interstate and foreign commerce prior to the **defendant's** possession. An information inquiry into the firearm revealed no theft.

17. According to the Missouri State Highway Patrol Crime Laboratory, the methamphetamine seized from the **defendant** were analyzed and confirmed as 11.91 grams of methamphetamine. **Beck** also possessed three plastic bags of marijuana, prescription medication, and marijuana oil. According to the parties' plea agreement, the **defendant** is accountable, including relevant conduct, for more than 50 grams but less than 200 grams of methamphetamine.

(PSR, ¶¶s 12-17)

**Offense Level Computation**

Beck's base offense level for at least 50 grams but less than 200 grams of methamphetamine, was 24, pursuant to USSG §2D1.1(c)(8). (PSR, ¶ 25) There were no specific offense characteristics. (PSR, ¶ 26) After a three level reduction for acceptance of responsibility, Beck's total offense level was 21. Beck was subject to a mandatory consecutive sentence of five years to any other sentence imposed. (PSR, ¶ 34)

**Criminal History**

Beck's criminal history score was zero, and his criminal history category was I.    (PSR, ¶ 57)

The PSR listed Beck's prior felony convictions, resulting in him being imprisoned, as follows:

- May 21, 1991, conviction in the Circuit Court of Ste. Genevieve County, Missouri, Docket Number CR991-13FX, for the felony of Burglary in the Second Degree, for which Beck was granted probation; but on March 16, 1993, Beck's probation was revoked, he was sentenced to 4 years imprisonment; was paroled from prison on December 23, 1993; on October 21, 1994, his parole was revoked; on September 15, 1996, Beck escaped from confinement; on March 26, 1997, Beck was returned to prison; then on July 29, 1997, Beck was discharged.

- April 10, 1991, convictions in the Circuit Court of Perry County, Missouri, Docket Number CR491-159FX, for the felony of Burglary in the Second Degree in Count I, and for the felony of Stealing, for which Beck was granted probation; but on January 29, 1993, Beck's probation as to both Counts I and II was revoked, he was sentenced to 5 years imprisonment on each count, concurrent; was paroled from prison on December 23, 1993; on October 21, 1994, his parole was revoked; on September 15, 1996, Beck escaped from confinement; on March 26, 1997, Beck was returned to prison; then on July 29, 1998, Beck was discharged.

- February 3, 1993, convictions in the Circuit Court of Perry County, Missouri, Docket Number CR892-2222FX, for the felony of Burglary in the Second Degree in Count I, and for the felony of Stealing, for which Beck was sentenced to concurrent terms of imprisonment of five years on each count; was paroled from prison on December 23, 1993; on October 21, 1994, his parole was revoked; on September 15, 1996, Beck escaped from confinement; on March 26, 1997, Beck was returned to prison; then on August 20, 1998, Beck was discharged.

- May 5, 1994, conviction in the Circuit Court of Ste. Genevieve County, Missouri, Docket Number CR994-109F, for the felony of Forgery, for which Beck was sentenced to 5 years imprisonment; on September 15, 1996, Beck escaped from confinement; on March 26, 1997, Beck was returned to prison; then on April 30, 2000, Beck was released based on "institutional expiration of sentence."

- October 8, 1997, conviction in the Circuit Court of St. Louis, Missouri, Docket Number 22971-01483-01, for the felony of Escape or Attempted Escape from Confinement, for which Beck was sentenced to 5 years imprisonment; on May 1, 2000, Beck was paroled; then on April 27, 2003, Beck was discharged.

(PSR, ¶¶ 37, 38, 40, 41, 42)

Case: 1:20-cv-00067-SNLJ   Doc. #:  8   Filed: 10/07/20   Page: 10 of 29 PageID #: 76

**Guideline Imprisonment Range**

Based on a total offense level of 21, and a criminal history category of I, Beck' guideline imprisonment range was 37 to 46 months, plus 60 months consecutive on Count 3.   (PSR, ¶ 89)

**Sentencing Hearing**

A sentencing hearing was held before this Court on March 19, 2019. During the hearing, this Court asked Beck if he had read the presentence report, and had gone over it in detail with his lawyer. Beck replied, "Yes." (S. Tr., p. 2) Beck's counsel, Mr. Zimmerman, indicated to the court that there were no additions, corrections or objections to the presentence report by Defendant. (S. Tr., p. 2)

This Court asked for the Government's recommendation.  The Government requested a sentence of 37 months on Counts I and II, plus 60 months consecutive on Count III, for a total of 97 months. (S. Tr., p. 4) Mr. Zimmerman, on behalf of Beck, asked the Court to impose a sentence of 18 months on Counts I and II, consecutive to 60 months on Count III, for a total of 78 months. (S. Tr., p. 4)    After hearing the recommendations from counsel, this Court imposed a sentence of 18 months on Counts I and II, consecutive to 60 months on Count III, for a total of 78 months. (S. Tr., p. 8)

**D.  DIRECT APPEAL**

Beck did not file a direct appeal. On the day of sentencing, Mr. Zimmerman filed, on Beck's behalf, a Certification of Compliance with Local Rule 12.07(A), indicating that he had explained to Beck his right to appeal, and that Beck had not requested him to file a Notice of Appeal. (DCD 44)

**E.  MOTION FOR POST-CONVICTION RELIEF PURSUANT TO 28 U.S.C. § 2255**

10

On March 30, 2020, Beck timely filed a Motion pursuant to 28 U.S.C. § 2255 to vacate his convictions on Counts I, II and III. (Doc. 1, present case, 2255 Motion)

Beck's claim as to Count III is that the Indictment failed to charge him with violating a federal statute.  Beck "appeals his conviction on one count of trafficking drugs with a firearm 18 U.S.C. §924(c)(1)(A) and 18 U.S.C. § 924(c)(1)(A)(i) on the grounds that the indictment was insufficient as if failed to charge him with a criminal offense." (Doc. 1, 2255 Petition, p. 3)  Similarly Beck claims that "Count (3) of Mr. Beck's indictment alleged a violation of 18 U.S.C. §924(c) and provided that Beck "in furtherance of a drug trafficking crime…did unlawfully possess a firearm…" This Petitioner's position is, because §924(c) criminalizes two distinct offenses, the indictment failed to charge him with violating a federal statute."     (Doc. 1, 2255 Motion, p. 4).

Beck's claim as to his conviction under Count I for being a convicted felon in possession of a firearm, is that the Indictment did not allege that he knew he was a convicted felon, as subsequently required by Rehaif v. United States, *Rehaif v. United States*, ___U.S. ____, 139 S.Ct. 2191 (2019). Beck claims "In other words, the rule announced in Rehaif plainly narrowed the scope of a criminal statute. Before Rehaif, a prosecutor only had  to prove the person "knowingly possessed" a firearm; after the "substantive" decision in Rehaif, the government [must] prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. Pp 3-12."     (Doc. 1, 2255 Motion, p. 21). "Therefore, the issue for the court to grant Mr. Beck, the habeus relief of the "substantive" rule in Rehaif is, whether he "knowingly" possessed the firearm, and whether he understood the "status."" *Id.*

Beck concludes his Motion to Vacate, as follows:

11

Wherefore, pursuant to the Constitution, Laws of the United States, and consistant with the "substantive" rule of congressional intent of Congress in Rehaif v. United States, No. 17-9560, this Petitioner respectfully request this honorable court to review his petition and grant him habeus relief consistent with the Rehaif decision, or grant him a new plea agreement, as predicated under the "substantive" rule in Rehaif. Also, since the federal government journalized his §924(c) conviction, therby failing to charge a violation of a [codified federal] statute, the indictment should be dismissed.

Id. at 27.

In his Motion, Beck makes no credible claim that his conviction and sentence for Count

II, possession with intent to distribute methamphetamine, should be vacated.

## II. APPLICABLE LAW

### A.  NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF.

28 U.S.C. §2255 provides in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District

Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the Petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the Petitioner to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of

establishing the need for an evidentiary hearing. Section 2255 provides a remedy for

jurisdictional and constitutional errors.  A defendant may seek relief on grounds that the

sentence was imposed in violation of the Constitution or laws of the United States, the court

lacked jurisdiction to impose a sentence, the sentence exceeded the maximum authorized by law,

12

or the sentence is otherwise subject to collateral attack. *Sun Bear v. United States,* 644 F.3d 700, 704 (8th Cir. 2011), citing 28 U.S.C.A. § 2255(a).

In determining whether petitioner is entitled to an evidentiary hearing, the court must consider "[a] petitioner's allegations … as true and a hearing should be held unless they are contradicted by the record, inherently incredible, merely conclusions, or would not entitle the petitioner to relief." *Garcia v. United States*, 679 F.3d 1013, 1014 (8th Cir. 2012), citing *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979), quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471 (1962). "[T]he court need not give weight to Aconclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

"No hearing is required when the claim 'is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007), quoting *Shaw v. United States,* 24 F.3d 1040, 1043 (8th Cir.1994). *See also United States v. Robinson*, 64 F.3d 403, 405 (8th Cir. 1995); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (2255 "petition can be dismissed without a hearing if . . . the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact").

**B.  EFFECT OF GUILTY PLEA ON APPEALABLE ISSUES.**

A defendant who enters a plea of guilty thereby waives his right to request relief under 28

U.S.C. § 2255 with the exception of those issues related to jurisdiction. "A valid guilty plea, however, 'operates as a waiver of all non-jurisdictional defects or errors.'" *United States v. Staples*, 435 F.3d 860, 864 (8th Cir. 2006), quoting *United States v. Vaughan*, 13 F.3d 1186, 1188 (8th Cir. 1994).

When the Petitioner delivers a guilty plea, the focus of a collateral attack must remain "limited to the nature of counsel's advice and the voluntariness of the plea." *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984), quoting *Tollett v. Henderson*, 411 U.S. 258, 266, 93 S.Ct. 1602, 1608 (1973). "[A] guilty plea operates as a break in the chain of events . . . of the criminal process… [a criminal defendant] may not thereafter raise independent claims relating to deprivation of constitutional rights that" antedated the plea. *Tollett,* 411 U.S. at 267. Only the voluntary and intelligent character of the guilty plea may be attacked. *Id.* Although the *Tollett* decision concerned state prisoner habeas corpus petitions, the Eighth Circuit has applied it to motions under Section 2255. *Bass*, 739 F.2d at 406.

## C.  CLAIMS ALLEGING INEFFECTIVE ASSISTANCE OF COUNSEL.

To prevail on a claim alleging ineffective assistance of counsel, the Petitioner must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the Petitioner must first show that the counsel's performance was deficient. *Id.* at 687. This requires the Petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Second, the Petitioner must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.  The Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors,

14

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different." *Rogers v. United States,* 1 F.3d 697, 700 (8th Cir. 1993*)* (quotations omitted). The Eighth Circuit has also described the *Strickland* test as follows: "whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation.   If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the "court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.   Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and considering all the circumstances."   *Fields*, 201 F.3d at 1027, quoting *Strickland,* 466 U.S. at 688.   A reviewing court's "scrutiny of counsel's performance must be highly deferential."   *Strickland*, 466 U.S. at 689.   "When assessing attorney performance, courts should avoid the distorting effects of hindsight and try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time.'"   *Rodela-Aguilar v. United States,* 596 F.3d 457, 461 (8th Cir. 2010), quoting *United States v. Staples,* 410 F.3d 484, 488 (8th Cir. 2005).

## III. DISCUSSION

## A.  THE INDICTMENT CHARGING BECK IN COUNT III WITH A VIOLATION OF 18 U.S.C. § 924(C) PROPERLY CONTAINED THE ELEMENTS OF THE OFFENSE

15

**AND SUFFICIENTLY CHARGED BECK WITH A VIOLATION OF THE STATUTE, AND BECK WAS NOT PREJUDICED BY THE CHARGE DESCRIBED IN COUNT III OF THE INDICTMENT**

Beck's claim as to Count III is that the Indictment failed to charge him with violating a federal statute. Count (3) of Mr. Beck's indictment alleged a violation of 18 U.S.C. §924(c) and provided that Beck "in furtherance of a drug trafficking crime...did unlawfully possess a firearm…" Beck's position is, because §924(c) criminalizes two distinct offenses, the indictment failed to charge him with violating a federal statute. (Doc. 1, 2255 Motion, p. 4).

**1.      Pursuant to the Plea Agreement, Beck Has Waived His Right To Bring This Claim.**

Beck waived "all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel."    (Plea Ag., ¶ 7.b., p. 10)    It is well-established that a defendant may waive his or her Section 2255 rights as part of a plea agreement, so long as the waiver is made knowingly and voluntarily and its enforcement does not result in a "miscarriage of justice." *See DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000); *United States v. Andis,* 333 F.3d 886, 891 (8th Cir. 2003). Some of the components of that exception include the appeal of an illegal sentence, a sentence in violation of the terms of an agreement, or a claim asserting ineffective assistance of counsel. *Andis*, 33 F.3d at 891 (citing *DeRoo,* 223 F.3d at 923-24). Nevertheless, the Eighth Circuit has cautioned that "waivers are contractual agreements between a defendant and the Government and should not be easily voided by the courts." *Id.*

Beck entered into the Plea Agreement, including the provision in which he waived his right to appeal his conviction in a post-conviction proceeding, knowingly and voluntarily.

16

Furthermore, he has not shown, and cannot show, that enforcement of the waiver would result in

a "miscarriage of justice."

### 2.  Beck's Claim Fails on the Merits

Beck was charged in Count III with a violation of 18 U.S.C. § 924(c), which provides as

follows:

> (c) (1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

The Indictment charged Beck in Count III with a violation of 18 U.S.C. § 924(c), as

follows:

### COUNT III

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 29, 2018, in Perry County, in the Eastern District of Missouri, the defendant,

**LONNIE L. BECK**,

during and in relation to a drug trafficking crime for which he may be prosecuted in a Court of the United States, to-wit: Possession of Methamphetamine, a Controlled Substance, With Intent to Distribute, knowingly possessed a firearm in furtherance thereof, to-wit: a Rossi, Model 462, .357 Magnum revolver, in violation of Title 18, United States Code, Section 924(c)(1)(A) and punishable under Title 18, United States Code, Section 924(c)(1)(A)(i).

(Doc. 1)

17

Paragraph 3 of Beck's Plea Agreement recited the elements of the 924(c) offense charged

in Count III.

> As to Count III, the defendant admits to knowingly violating Title 18, United States Code, Section 924(c)(1)(A), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:
>
> *One*, the defendant committed the elements of a crime of violence or drug trafficking crime prosecutable in federal court;
>
> *Two*, the defendant knowingly used, carried, or possessed a firearm; and
>
> *Three*, the use or carrying of the firearm was during and in relation to, or the possession of the firearm was in furtherance of, the defendant's crime of violence or drug trafficking crime.

(Plea Ag., p. 3)

At the plea hearing, this Court recited the elements of Count III, as follows:

> THE COURT: Count 3, do you admit that you committed the crimes -- the elements of the crime of violence or drug trafficking as set out in the Count 2 and that you knowingly used, carried or possessed a firearm that was in furtherance of the drug-trafficking crime, and that's  recited in Count 2? Do you admit all that  too?
>
> THE DEFENDANT: Yes, sir.

(Plea Tr., pp. 15-16)

Count III of the Indictment properly charged the elements of possessing a firearm

in furtherance of the offense charged in Count II of possession of methamphetamine with intent

to distribute. Count III of the Indictment alleged that defendant Beck,

> during and in relation to a drug trafficking crime for which he may be prosecuted in a Court of the United States, to-wit: Possession of Methamphetamine, a Controlled Substance, With Intent to Distribute, knowingly possessed a firearm in furtherance thereof, to-wit: a Rossi, Model 462, .357 Magnum revolver, in violation of Title 18, United States Code, Section 924(c)(1)(A) and punishable under Title 18, United States Code, Section 924(c)(1)(A)(i).

18

Dissecting the charge in Count III reveals that Beck was charged with the required elements that he "knowingly possessed a firearm in furtherance thereof" relative to the previously referenced "drug trafficking crime for which he may be prosecuted in the a Court of the United States, to-wit: Possession of Methamphetamine, a Controlled Substance, With Intent to Distribute . . ." It is clear that the Indictment tracked the language of § 924(c) defining a violation of the "in furtherance of any such crime" alternative way of committing a violation of § 924(c).

Secondly, Beck cannot establish that the charge in Count III of the Indictment prejudiced him in any way. It provided clear, specific, and unambiguous notice that he was charged with violating § 924(c) for possessing a firearm in furtherance of his drug trafficking crime charged in Count II, possession of methamphetamine with intent to distribute.   The evidence supporting that charge was overwhelming. Beck admitted in the plea agreement that in his backpack found in close proximity to Beck, officers found, among several things, approximately five grams of methamphetamine, and a chrome revolver, which was in a "zipper vault" for which Beck provided the combination. The officers also located a quantity of methamphetamine in a pocket of clothes he was wearing when he was patted down. Beck admitted to the officers that the backpack belonged to him and informed Detective Schamburg that there was a chrome revolver in it. The revolver, a Rossi .357 Magnum, SN: HU937491, was loaded with six rounds and was seized.   Assorted cash bills amounting to $1480 were also found in the "zipper vault." Beck admitted to previously being convicted of a felony crime and admitted that the methamphetamine belonged to him.

During the plea hearing, Beck admitted that the facts contained in the plea agreement were true, and affirmed that he committed the acts described by the Government and set forth in

19

the Plea Agreement. (Plea Tr., pp. 13-15)  Beck's claim lacks merit, and he is not entitled to

any relief on this claim. See *Close v. United States*, 679 F.3d 714, 718–21 (8th Cir. 2012)

(analyzing an indictment charging a violation of §924(c) and finding no prejudice).

   In reviewing a claim that jury instructions improperly charged a violation of § 924(c), the

Eighth Circuit in *Close* stated:

> To decide whether a plain *Gamboa* instruction error affected the defendant's
> substantial rights, we have looked to the strength of the evidence supporting the
> jury's verdict and, most importantly, whether the facts suggested that "the firearm
> reasonably could have been possessed 'during and in relation to' drug trafficking
> but not 'in furtherance' of drug trafficking." *United States v. Mashek*, 606 F.3d
> 922, 932 (8th Cir.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 1605, 179 L.Ed.2d
> 506 (2011).
>
> " 'In furtherance of' is only a *slightly* higher standard than 'during and in relation
> to.' " *Kent,* 531 F.3d at 656. Thus, we have consistently denied plain error relief
> on this issue when the firearms were found in immediate proximity to drugs or
> other drug trafficking contraband in a location controlled by or accessible to the
> defendant. *See Mashek,* 606 F.3d at 932; *United States v. Coleman,* 603 F.3d 496,
> 501 (8th Cir.2010); *Kent,* 531 F.3d at 652–53, 656. The facts surrounding Close's
> conviction are nearly identical to those in *Mashek,* 606 F.3d at 927, where
> surveillance equipment and multiple firearms were found in defendant's home,
> including a loaded handgun hanging on a hook near methamphetamine supplies
> and equipment.

   Count III of the Indictment sufficiently charged Beck with a violation of § 924(c).

Beck's claim to the contrary lacks merit, and is refuted by the record. Beck cannot establish any

prejudice relative to the 924(c) charge set forth in Count III of the Indictment.  Accordingly,

Beck's claim on this basis will be denied, without a hearing.

### B.  BECK'S CONVICTION SHOULD NOT BE AFFECTED BY *REHAIF*

   Beck's second claim, regarding his conviction under Count I for being a convicted felon

in possession of a firearm, is that the Indictment did not allege that he knew he was a convicted

felon, as subsequently required by *Rehaif v. United States*, ____U.S._____, 139 S.Ct. 2191

20

(2019). Beck claims "In other words, the rule announced in Rehaif plainly narrowed the scope of a criminal statute. Before Rehaif, a prosecutor only had to prove the person "knowingly possessed" a firearm; after the "substantive" decision in Rehaif, the government [must] prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. Pp 3-12."      (Doc. 1, 2255 Motion, p. 21). "Therefore, the issue for the court to grant Mr. Beck, the habeus relief of the "substantive" rule in Rehaif is, whether he "knowingly" possessed the firearm, and whether he understood the "status."" *Id*.

Beck appears to assert that his conviction should be vacated in light of the United States Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019). In *Rehaif*, the Supreme Court held the knowledge requirement in Title 18, United States Code, Section 924(a)(2) applies not only to the defendant's possession of a firearm or ammunition, but also to his prohibited status. For example, in prosecutions under Section 922(g)(1), the United States must prove, in addition to knowing possession, that at the time of that possession, the defendant knew he previously had been convicted of a crime punishable by a term of imprisonment exceeding one year. To be clear, this requirement does not demand proof that the defendant specifically knew that he was legally prohibited from possessing a firearm.

Beck's claim, however, will be dismissed as waived, procedurally defaulted, and on the merits.

### 1.    Pursuant to the Plea Agreement, Beck Waived His Right To Bring This Claim

As referenced previously, Beck waived "all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section

2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel."   (Plea

Ag., ¶ 7.b., p. 10). It is well-established that a defendant may waive his or her Section 2255

rights as part of a plea agreement, so long as the waiver is made knowingly and voluntarily and

its enforcement does not result in a "miscarriage of justice." *See DeRoo,* 223 F.3d at 923; *Andis,*

333 F.3d at 891. Some of the components of that exception include the appeal of an illegal

sentence, a sentence in violation of the terms of an agreement, or a claim asserting ineffective

assistance of counsel. *Andis*, 33 F.3d at 891 (citing *DeRoo,* 223 F.3d at 923-24). Nevertheless,

the Eighth Circuit has cautioned that "waivers are contractual agreements between a defendant

and the Government and should not be easily voided by the courts." *Id.*

Beck executed the Plea Agreement, agreeing to its terms, including the provision in which

he waived his right to appeal his conviction in a post-conviction proceeding, knowingly and

voluntarily. Furthermore, he has not (and cannot) show that enforcement of the waiver would

result in a "miscarriage of justice." To be clear, Beck does not allege actual innocence. Indeed, a

review of the facts admitted by Beck in his Plea Agreement, the PSR, and during the change of

plea and sentencing hearings contradict any claim he could make of actual innocence.

Significantly, as a convicted felon, Beck knew he was not supposed to have a gun, and

acknowledged that he was not supposed to have a gun to Detective Shamburg. When Detective

Schamburg found Beck's backpack, Beck admitted that the backpack belonged to him and

informed Detective Schamburg that there was a chrome revolver in it.  Detective Schamburg was

aware that Beck was a convicted felon and asked him if he was prohibited from owning a firearm.

Beck indicated that he knew he was not supposed to have a gun.

Furthermore, Beck admitted in the Agreement and during the plea colloquy that prior to

22

the offense for which he was pleading guilty, he had been "convicted of crimes punishable by

imprisonment for a term exceeding one year, including:

> 1) On January 29, 1993, in the Circuit Court of Perry County, Missouri, in Case
>    Number CR491-159FX, for Class C Felony of Burglary in the Second Degree
>    and the Class C Felony of Stealing; and
>
> 2) On February 3, 1993, in the Circuit Court of Perry County, Missouri, in Case
>    Number CR892-2222FX, for Class C Felony of Burglary in the Second
>    Degree.

Plea Ag., ¶ 4, pp. 5-6.  Beck admitted the same during this plea hearing. Plea Tr., pp. 13-15.

In addition, the PSR issued after Beck pleaded guilty, but before he was sentenced, and to

which Beck did not object, in pertinent part also set forth the following felony convictions:

- May 21, 1991, conviction in the Circuit Court of Ste. Genevieve County, Missouri, Docket
  Number CR991-13FX, for the felony of Burglary in the Second Degree, for which Beck
  was granted probation; but on March 16, 1993, Beck's probation was revoked, he was
  sentenced to 4 years imprisonment; was paroled from prison on December 23, 1993; on
  October 21, 1994, his parole was revoked; on September 15, 1996, Beck escaped from
  confinement; on March 26, 1997, Beck was returned to prison; then on July 29, 1997, Beck
  was discharged.

- April 10, 1991, convictions in the Circuit Court of Perry County, Missouri, Docket Number
  CR491-159FX, for the felony of Burglary in the Second Degree in Count I, and for the
  felony of Stealing, for which Beck was granted probation; but on January 29, 1993, Beck's
  probation as to both Counts I and II was revoked, he was sentenced to 5 years imprisonment
  on each count, concurrent; was paroled from prison on December 23, 1993; on October 21,
  1994, his parole was revoked; on September 15, 1996, Beck escaped from confinement; on
  March 26, 1997, Beck was returned to prison; then on July 29, 1998, Beck was discharged.

- February 3, 1993, convictions in the Circuit Court of Perry County, Missouri, Docket
  Number CR892-2222FX, for the felony of Burglary in the Second Degree in Count I, and
  for the felony of Stealing, for which Beck was sentenced to concurrent terms of
  imprisonment of five years on each count; was paroled from prison on December 23, 1993;
  on October 21, 1994, his parole was revoked; on September 15, 1996, Beck escaped from
  confinement; on March 26, 1997, Beck was returned to prison; then on August 20, 1998,
  Beck was discharged.

- May 5, 1994, conviction in the Circuit Court of Ste. Genevieve County, Missouri, Docket Number CR994-109F, for the felony of Forgery, for which Beck was sentenced to 5 years imprisonment; on September 15, 1996, Beck escaped from confinement; on March 26, 1997, Beck was returned to prison; then on April 30, 2000, Beck was released based on "institutional expiration of sentence."

- October 8, 1997, conviction in the Circuit Court of St. Louis, Missouri, Docket Number 22971-01483-01, for the felony of Escape or Attempted Escape from Confinement, for which Beck was sentenced to 5 years imprisonment; on May 1, 2000, Beck was paroled; then on April 27, 2003, Beck was discharged.

(PSR, ¶¶ 37, 38, 40, 41, 42)

As of May 29, 2018, Beck had several convictions for felonies resulting in him being sentenced to terms of imprisonment exceeding one year, for which he actually was incarcerated in the Missouri Department of Corrections several times. Beck was sentenced to five years imprisonment for six different felony convictions, and four years imprisonment for a seventh felony conviction. Beck certainly knew he had been sentenced to terms of imprisonment exceeding one year. Beck knew he had been incarcerated, especially at the time he escaped from incarceration, as reflected in paragraph 42, when he was convicted and sentenced to serve five years for Escape or Attempted Escape from Confinement. Based on the nature of his prior convictions and the amount of time to which he was sentenced and then actually incarcerated, Beck cannot now credibly claim that on May 29, 2018, when he committed the instant offense for which he was convicted, that he did not know he previously had been convicted of a crime punishable by a term of imprisonment exceeding one year.

If Beck's *Rehaif* claim had been before the Eighth Circuit on direct appeal for plain error review, it would have been his "burden to prove his substantial rights were affected by the

**Rehaif** error."   *United States v. Crumble*, No. 19-2197, --- F.3d ---, ----, 2020 WL 39556989, at *2 (8th Cir. July 13, 2020). Based on Beck's numerous prior felony convictions for which he was actually imprisoned for several years, and his admission to Detective Schamburg that he knew he was not supposed to have a gun, he could not show his substantial rights were affected by omission in the Indictment that he knew he was a convicted felon when he possessed the firearm as charged in the Indictment. See *Crumble*, 2020 WL 39556989 at *2; *United States v. Hollingshed*, 940 F.3d 410, 415-16 (8th Cir. 2019).

Furthermore, Beck fails to allege any new and reliable evidence, let alone new and reliable evidence that indicates his innocence. As a result, Beck has not shown (and cannot show) that in light of all the evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt of the crime of being a convicted felon in possession of a firearm as charged in Count I of the Indictment. Because Beck has not established that a fundamental miscarriage of justice occurred, his claim should be denied.

### 2.    Beck's Claim Is Procedurally Defaulted.

The Supreme Court has made clear that a defendant may properly claim in a Section 2255 motion that, based on a court decision that resulted in a change in the law after affirmance of his conviction, his "conviction and punishment were for an act that the law does not make criminal." *Davis v. United States*, 417 U.S. 333, 346 (1974); *see id.* at 346-47 ("There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'presents exceptional circumstances' that justify collateral relief under § 2255" (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962))). Because *Rehaif* narrows the "class of persons that the law punishes" under Sections 922(g) and 924(a), it is retroactive on collateral review. *Welch v.*

25

*United States*, 136 S.Ct. 1257, 1267 (2016).

However, Beck failed to preserve a knowledge-of-status objection in his direct proceedings or on appeal. As a result, Beck has procedurally defaulted such a claim in light of the general rule that claims not raised at trial or on direct appeal "may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also Wainwright v. Sykes*, 433 U.S. 72, 85-86 (1977) (claim defaulted when no contemporaneous objection was lodged at trial); *Murray v. Carrier*, 477 U.S. 478, 490-492 (1986) (claim not raised on direct appeal is procedurally defaulted).

To overcome the procedural-default defense, Beck must either show both "cause" for the default and "actual prejudice" from the asserted *Rehaif* error, or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Here, Beck has not alleged, much less established, the requisite showing of "cause." Indeed, to the extent Beck would attempt to invoke "futility" to satisfy the "cause" showing, the Supreme Court has held that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that time," with only a narrow carve-out for a hypothetical claim that "is so novel that its legal basis is not reasonably available to counsel." *Bousley*, 523 U.S. at 622-23 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1985)). The question presented in *Rehaif* was thoroughly and repeatedly litigated in the courts of appeals over the last three decades, and as such, it does not qualify under the novelty exception. *See, e.g., id.* at 622.

Because Beck cannot satisfy the "cause" showing, he must make a threshold showing of "actual innocence." *Smith v. Murray*, 477 U.S. 527, 537 (1986). The "actual innocence" exception requires Beck to show that it was "more likely than not that no reasonable juror would have

26

convicted him." *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995). In that regard, "'actual innocence' means factual innocence, not more legal insufficiency." *Bousley*, 523 U.S. at 623. In analyzing a claim of actual innocence, "[t]he habeas court must make its determination concerning the Beck's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup v. Delo*, 513 U.S at 328. Far from actual innocence, Beck admitted to the investigating officer that he had a gun in his backpack, and he knew he was not supposed to have a gun.

Once again, Beck has not alleged actual (or factual) innocence. And, for the reasons set forth above, any claim of actual innocence would fail. Accordingly, this Court will deny Beck's second ground for relief.

### 3.    Beck's Claim Fails On The Merits.

To the extent Beck would allege ineffective assistance of counsel to circumvent the waiver in the Agreement, his claim, however, would fail under the first prong of the *Strickland* test, as "counsel [is] not required to make meritless objections under then-existing precedent, anticipate changes in the law, or raise every potentially meritorious claim." *United States v. Garza*, 340 Fed.Appx. 243, 244-45 (5th Cir. 2009) (per curiam); *Parker v. Bowersox*, 188 F.3d 923, 929 (8th Cir. 1999) (not ineffective assistance of counsel to "fail[] to anticipate a change in the law"); *United States v. Doe*, 810 F.3d 132, 154 (3d Cir. 2015) (same). The opinion in *Rehaif* was issued on June 21, 2019, well after Beck was indicted, convicted, and sentenced in the underlying criminal case. Prior to that, every court of appeals to consider the issue, including the United States Court of Appeals for the Eighth Circuit, had determined that the knowledge requirement in Section

924(a)(2) applied only to the defendant's possession of a firearm or ammunition, not to his restricted status. *See, e.g.*, *United States v. Stein*, 712 F.3d 1038 (7th Cir. 2013) (convicted of a misdemeanor crime of domestic violence under 922(g)(9)); *United States v. Butler*, 637 F.3d 519, 523--24 (5th Cir. 2011) (dishonorable dischargee under 922(g)(6)); *United States v. Olender*, 338 F.3d 629, 637 (6th Cir. 2003) (felon under 922(g)(1)); *United States v. Kafka*, 222 F.3d 1129, 1131--33 (9th Cir. 2000) (subject of a restraining order under 922(g)(8)); *United States v. Hutzell*, 217 F.3d 966, 967--68 (8th Cir. 2000) (convicted of a misdemeanor crime of domestic violence under 922(g)(9)); *United States v. Montero-Camargo*, 177 F.3d 1113, 1120 (9th Cir. 1999) (illegal alien under 922(g)(5)), opinion withdrawn, 192 F.3d 946 (9th Cir. 1999), reinstated by en banc opinion, 208 F.3d 1122, 1127 n.8 (9th Cir. 2000); *United States v. Capps*, 77 F.3d 350, 352 (10th Cir. 1996) (felon under 922(g)(1)); *United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995) (en banc) (felon under 922(g)(1)); *United States v. Ballentine*, 4 F.3d 504, 506 (7th Cir. 1993) (fugitive from justice under 922(g)(2)); *United States v. Smith*, 940 F.2d 710, 713 (1st Cir. 1991) (felon under 922(g)(1)); *United States v. Dancy*, 861 F.2d 77, 81 (5th Cir. 1988) (felon under 922(g)(1)); *United States v. Sherbondy*, 865 F.2d 996, 1001 (9th Cir. 1988) (felon under 922(g)(1)). Because Beck cannot establish that defense counsel's performance was deficient by failing to move to dismiss the indictment on that ground. As previously discussed, Beck was not prejudiced by the allegation that Beck knew he was a convicted felon being omitted from Count I of the Indictment. Accordingly, Beck's claims will be denied, and his 2255 Motion will be denied, without an evidentiary hearing.

## **CONCLUSION**

For the foregoing reasons, this Court denies Beck's § 2255 petition without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Beck has not made a substantial showing of the denial of a federal constitutional right.

Dated this 7th day of October, 2020

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE